# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRAN A. BABYCH, on behalf of herself, )
the Class, and other similarly situated )
employees known and unknown, )
)
    Plaintiff, )    **Case No. 09 C 8000**
)
    v. )    **Judge Joan H. Lefkow**
)    **Magistrate Judge Geraldine Soat Brown**
PSYCHIATRIC SOLUTIONS, INC., a )
Delaware corporation, BHC )
MANAGEMENT SERVICES OF )
STREAMWOOD, LLC, a Delaware )
limited liability company, BHC )
STREAMWOOD HOSPITAL, INC., a )
Tennessee corporation, d/b/a )
STREAMWOOD BEHAVIORAL )
HEALTH CENTER, CINDY MEYER, )
individually, and DONNA STONE, )
individually, )
)
    Defendants. )


## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

    Before the court is plaintiff Fran A. Babych's motion to compel witness Gina Bruhn to answer questions for which defendants asserted attorney-client privilege during Ms. Bruhn's October 1, 2010 deposition. (Pl.'s Mot.) [Dkt 64.] Babych also seeks documents and notes created by defendants' counsel during a meeting with Ms. Bruhn on April 20, 2010, for which defendants assert attorney-client privilege and work-product protection. For the reasons set forth below, Babych's motion is denied.

1

# BACKGROUND

The underlying claims in this putative class action involve allegations of age discrimination, retaliation, and violations of the Illinois Minimum Wage Law, Family and Medical Leave Act, and Fair Labor Standards Act. (Notice of Rem., Ex. A, Compl. ¶ 1.) [Dkt 1.] On September 10, 2010, Babych added claims that she was discharged in violation of the Illinois Whistleblower Act and Illinois common law, in retaliation for her reports that defendants defrauded private insurers and Medicaid. (Am. Compl. ¶ 1.) [Dkt 38.] Babych worked as a case manager at defendant Streamwood Behavioral Health Center ("Streamwood") until May 22, 2008. (Ans. to Am. Compl. ¶12.) [Dkt 50-52.]

Ms. Bruhn was the Director of Risk Management and Performance Improvement at Streamwood until June 30, 2010. (Defs.' Resp., Ex. A, Dep. Gina Bruhn at 97.) [Dkt 69.][1] According to defendants, in April 2010, Ms. Bruhn's name came up during Babych's depositions of individual defendants Cindy Meyer and Donna Stone, prompting defendants' then counsel Michael Rusie to arrange a meeting between Ms. Bruhn, himself, and Carolyn Paganoni, Streamwood Hospital's Director of Human Resources, on April 20, 2010. (Defs.' Resp. at 2.)[2] The discussion at that meeting and documents prepared during it are the subject of Babych's current motion.

Babych has submitted a declaration attesting that Ms. Bruhn contacted her in June 2010 to

---

[1] Portions of Ms. Bruhn's deposition are included as exhibits to Babych's Motion to Compel (Pl.'s Mot., Ex. B); Defendants' Response (Defs.' Resp., Ex. A); Babych's Reply (Pl.'s Reply, Ex. H) [dkt 77]; and Defendants' Surreply (Defs.' Surreply, Ex. B) [dkt 80]. For simplicity, this opinion cites directly to the deposition pages.

[2] Mr. Rusie was at the time one of the lawyers representing defendants in the lawsuit. He was given leave to withdraw from this case, however, on July 6, 2010. [Dkt 31.]

tell her about the April 20 meeting. (Pl.'s Reply, Ex. C-2, Decl. Fran A. Babych.) According to

Babych, Ms. Bruhn reported that she was threatened that she could lose her job if she talked about

the litigation and have "the Feds knocking at her door" if she disclosed information about the

defendants. (*Id*. ¶5(c).) Babych also claims that Ms. Bruhn was pressured into signing a

confidentiality agreement stating she would not talk about the case. (*Id.* ¶ 5(d)-(f).) However,

during her deposition on September 9, 2010, Babych testified that aside from having lunch with Ms.

Bruhn "way before this summer," the two had not spoken. (Defs.' Surreply, Ex. A, Dep. Fran

Babych at 24-25.)

On September 9, 2010, Babych attempted to serve Ms. Bruhn with a subpoena to appear for

a deposition on September 20, 2010. (Pl.'s Reply, Ex. C-1.) In her declaration, Babych avers that

Ms. Bruhn called her on September 15, 2010 and told her that "I cannot afford to be dragged into

your lawsuit" and "[c]all back that subpoena or I'll give a bad deposition and just keep saying 'I

don't remember.'" (Babych Decl. ¶ 8.) Ms. Bruhn did not appear for the September 20 deposition,

but did appear on October 1, 2010. (Bruhn Dep. at 85-87.)

At her deposition, Ms. Bruhn testified that she felt "tricked" into the April 20 meeting

because she was not told the reason for it beforehand, but she understood after she arrived that she

was being questioned as an employee of Streamwood about the present litigation. (*Id.* at 105, 136-

37, 144-46, 151.) When asked by Babych's counsel about the substance of the April 20 meeting,

Ms. Bruhn responded that it involved the "[s]ame kinds of questions you're asking me." (*Id.* at 148.)

Ms. Bruhn further testified that after the meeting, Mr. Rusie typed up her statement and asked her

to sign it, but she initially refused because it contained inaccuracies. (*Id.* at 143.) Mr. Rusie then

revised the document and Ms. Bruhn signed it. (*Id.* at 143-44.) Ms. Bruhn testified she was not

ordered or forced to sign the statement.  (*Id.* at 153.)  She testified that the document did not bar her from talking about the Babych litigation, nor did she fear she would lose her job if she did not sign it.  (*Id.*)

Ms. Bruhn further testified that she never reported to Babych that she was forced to sign a confidentiality agreement.  (*Id.* at 178.)  She also testified that she has "never been frightened of Streamwood.  Carolyn Paganoni retaliating, absolutely.  Streamwood under Cindy Meyer, no."  (*Id.* at 179.)  She affirmed that no one, including Ms. Paganoni or Mr. Rusie, had ever threatened that "the feds would come knocking" at her door.  (*Id.* at 176-77.)

When Babych's counsel attempted to question Ms. Bruhn further about the April 20 meeting, counsel for defendants made a number of objections based on attorney-client privilege.  (*See id.* at 144-54.)  Babych now seeks an order compelling Ms. Bruhn to answer the following: 1) the number of pages of Ms. Bruhn's statement; 2) whether Mr. Rusie asked Ms. Bruhn not to talk to Babych about the case; 3) the questions and statements Mr. Rusie made to Ms. Bruhn; 4) Ms. Bruhn's responses; 5) what was incorrect about the draft statement; and 6) whether Ms. Bruhn made admissions against herself in the document.  (Pl.'s Mot. at 2-3.)  As to the first two requests, defendants have disclosed that the statement is one page long (Defs.' Resp. at 2), and Ms. Bruhn testified in her deposition that she was not asked to refrain from talking about the case.  (Bruhn Dep. at 178.)  The remainder of the requests are addressed below.

Following the filing of the present motion, defendants' counsel served Babych's counsel with responses and objections to Babych's supplemental document requests, in which they identified withheld documents from the April 20 meeting as subject to attorney-client privilege and work-product protection.  (Pl.'s Reply, Ex. D ¶ 2; Pl.'s Reply, Ex. G.)  Babych now wants those documents

4

turned over. On December 7, 2010, defendants delivered these documents to the court for *in camera* review.

## DISCUSSION

1.   <u>Preliminary matters</u>

     A.   <u>Compliance with Local Rule 37.2</u>

     Defendants argue that Babych's counsel failed to comply with Rule 37.2 of the Local Rules for the Northern District of Illinois, which requires that a party filing a discovery motion include a statement that the parties have attempted to resolve the issues in person or by telephone. Babych has not provided the required statement; however, e-mail and letter correspondence between counsel for both parties demonstrates that resolution was attempted but not achieved. (*See* Pl.'s Reply, Ex. F; Defs.' Resp., Ex. B.) Babych is not in compliance with Local Rule 37.2 (which requires telephone communication at the least), but given the parties' positions on this motion, it does not appear that further attempts at resolution would be fruitful. Babych's counsel – and indeed, all counsel – should be aware that non-compliance with the local rules may not be met with such leniency in the future.[3]

     B.   <u>Defendants' privilege log</u>

     Babych contends that defendants initially failed to list the documents on a privilege log, and

_____

[3]   Defendants also argue that Babych failed to serve notice on Ms. Bruhn as required by Federal Rule of Civil Procedure 37(a)(1), which requires that a motion to compel be brought with "notice to other parties and all affected persons . . . ." (Defs.' Resp. at 4 n. 7.) However, counsel for Babych represented in open court on November 9, 2010 that Ms. Bruhn had been served with both the initial motion to compel and the reply brief. Ms. Bruhn has not filed anything in connection with the motion.

that the privilege log defendants ultimately produced after Ms. Bruhn's deposition does not sufficiently set forth the basis for the privilege. (Pl.'s Reply at 4-6.) The mere assertion of attorney-client privilege is not enough, and the party asserting the privilege bears the burden of establishing all of its essential elements. *U.S. v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). A privilege log must describe the nature of the documents or communications not produced in a manner that, without revealing any potentially privileged information, will enable the other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). In this case, defendants' privilege log provided some information, but only *in camera* review of the documents supplied the court sufficient information to assess the privilege claim. Again, parties and their counsel are cautioned that a timely and adequate privilege log is required by the federal rules, and that failure to serve an adequate privilege log may result in a waiver of any protection from discovery. Counsel should not expect that the court will substitute its own review for a proper assertion of privilege

2. <u>Choice of law</u>

The next issue raised by the parties is whether state or federal privilege law applies. With respect to defendants' assertion of work-product protection, the answer is simple: work-product protection as set out in Federal Rule of Civil Procedure 26(b)(3) applies. The issue is more complicated, however, with respect to defendants' assertion of attorney-client privilege. In federal court, privileges, including attorney-client privilege, are governed by federal common law, except that privileges are determined by state law for an element of a claim or defense as to which state law provides the rule of decision. Fed. R. Evid. 501.

Babych argues that Illinois law should apply, pointing out that defendants' privilege log did

not indicate the claims to which the disputed material relates. (Pl.'s Mem. Law Supp. Mot. ¶ 3.) [Dkt. 65.] Defendants argue that federal law should apply. (Defs.' Resp. at 7.)

Babych's original complaint pled claims under state and federal laws prohibiting age discrimination and retaliation, claims under state and federal laws regarding overtime wages, and a claim under the FMLA. (Notice of Rem., Ex. A., Compl. ¶ 1.) That was the complaint pending at the time of the April 20 meeting. When Babych later moved to amend her complaint, she said that her counsel had been "focusing on investigating the age discrimination and other claims in the original Complaint" until shortly before the motion was filed in August 2010. (Pl.'s Mot. Leave to Amend ¶ 2.) [Dkt 32.] It is reasonable to conclude that defendants' counsel was doing the same during the April 20 meeting with Ms. Bruhn.

*In camera* review of the documents confirms that the information Mr. Rusie gathered relates to both Babych's federal and state age discrimination and wage claims. Nothing in the documents appears to relate exclusively to the state law claims. "If the material pertains to both state and federal claims, the issue [of what privilege law applies] is perhaps tougher." *Motorola, Inc. v. Lemko Corp*, No. 08 C 5427, 2010 WL 2179170 *1 (N.D. Ill. June 1, 2010). The court in *Motorola* observed that some courts have applied federal privilege law in that situation. *See id.* (citing *Mem. Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1061 and n.3 (7th Cir. 1981), and *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *see also Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (stating that "for the resolution of the present discovery dispute, which concerns material relevant to both federal and state claims, Rule 501 directs us to apply federal privilege law"). The court in *Motorola* further observed, however, that in both *Memorial Hospital* and *von Bulow*, applying federal privilege law gave narrower protection than state law. *Motorola*, 2010 WL

2179170 at *1.[4]  The same was true in *Pearson*, where the Third Circuit concluded that federal law

would not recognize a privilege available under Pennsylvania law.  *Pearson*, 211 F.3d at 72.  In this

case, Babych argues for Illinois law's limitation of privilege to the "control group" of the defendant

corporation, which is narrower than the federal privilege protection.  *See Upjohn Co. v. U.S.*, 449

U.S. 383, 389-96 (1981) (rejecting limiting attorney-client privilege to communications with

corporate control group).

The structure of Rule 501 directs the conclusion that federal law applies in this situation.

Under Rule 501, the federal common law of privilege is to be applied, except with respect to an

element as to which state law supplies the rule of decision.  In this case, state law *alone* does not

supply the rule of decision as to Babych's age discrimination and wage claims; federal law governs

some of those claims and, thus, the federal law of privilege applies to those claims.  Although

applying federal privilege law has, in other cases, resulted in a narrower scope of privilege, nothing

in Rule 501 suggests that the result (narrower or broader privilege) is a factor in choosing the law

to be applied.

Babych's case was removed to federal court because the ADEA, FLSA and FMLA claims

provide federal question jurisdiction.  There is supplemental jurisdiction over the corresponding state

law age discrimination and wage claims.  The federal common law of privilege applies to the

disputed materials because they relate to the federal claims.  That they also relate to the

corresponding state law claims does not make the state privilege law applicable because "it would

---

[4]  *Memorial Hospital* based its application of federal privilege law on the fact that the Sherman Act claim was the "principal claim" in the case.  664 F.2d at 1061.  The court in *Motorola* applied the state law of privilege after concluding that the disputed communications related only to the defendant's state law counterclaim.  2010 WL 2179170 at *2.

8

be meaningless to hold the communication privileged for one set of claims and not the other." *Mem. Hosp.*, 664 F.2d 1061 n. 3 (citing *Perrington v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal. 1978). That conclusion is supported by the Senate Report on Rule 501: "It is also intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case." Sen. Rpt. 93-1277 at 12 n. 16 (Oct. 18, 1974). The federal law of privilege governs the issue here.

3.    Attorney-client privilege

The attorney-client privilege exists to "encourage full and frank communication" between attorneys and clients. *Upjohn*, 449 U.S. at 389. The privilege recognizes that sound legal advice and advocacy depend upon the lawyer's being fully informed by the client. *Id.* The privilege protects communications made in confidence by a corporation's employees to the corporation's attorney, when acting as an attorney and not a business advisor, for the purpose of obtaining legal advice for the corporation. *Upjohn*, 449 U.S. at 394-99; *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2009). Furthermore, the privilege extends to factual investigations made by the attorney in order to provide legal advice to the client, and any factual statements made by the employee to the attorney pursuant to such an investigation are privileged. *Sandra T.E.*, 600 F.3d at 619-20. This is so because the privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf. *Sandra T.E.*, 600 F.3d at 618. Because the privilege withholds relevant information from the fact-finder, however, it is construed narrowly.

*U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

In this case, defendants have asserted attorney-client privilege for the communications between Mr. Rusie and Ms. Bruhn at the April 20 meeting, the handwritten notes of Mr. Rusie, and the draft and final statements Mr. Rusie drafted for Ms. Bruhn to sign. All three categories fall comfortably within those contemplated in *Upjohn* and *Sandra T.E.*, and are, therefore, privileged. First, the meeting was part of Mr. Rusie's factual investigation made for the purpose of advising defendants in the current litigation. Ms. Bruhn testified that Mr. Rusie asked her questions about the case similar to those asked by Babych's counsel at Ms. Bruhn's deposition. *In camera* review of Mr. Rusie's notes and Ms. Bruhn's statement also indicates that the substance of the meeting involved the pending case. Therefore, Mr. Rusie's questions and Ms. Bruhn's responses are privileged. Second, the handwritten notes by Mr. Rusie fall into the category of notes or memoranda documenting client interviews or other client communications in the course of the investigation, and are therefore privileged. *See Sandra T.E.*, 600 F.3d at 620. For the same reason, the draft and final documents memorializing Ms. Bruhn's statements are also subject to the privilege. *Id.*

Babych argues that the April 20 communications do not meet the *Upjohn* standard because the matters discussed were not within Ms. Bruhn's corporate duties and she was not sufficiently aware that she was being questioned in order that defendants could obtain legal advice. *See Upjohn*, 449 U.S. at 394. However, Ms. Bruhn's deposition testimony and review of the *in camera* documents indicate that Mr. Rusie questioned her about her knowledge of Babych's allegations in her capacity as a Streamwood employee. That type of questioning is similar to the investigation in *Sandra T.E.*, where the defendant's counsel interviewed a number of the defendant's employees to determine what they knew about the plaintiffs' allegations. Furthermore, Ms. Bruhn testified in her

deposition that, although she was not fully informed beforehand why she was meeting with Mr. Rusie, she understood after arriving that he was an attorney for defendants there to question her about the case.

The interview between Mr. Rusie and Ms. Bruhn on April 20 and the documents produced at that meeting are protected by attorney-client privilege.[5]

4.    Work-product protection

Defendants have also asserted that the withheld documents are protected from discovery by the work-product doctrine. That doctrine, codified in the federal rules, protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. Fed. R. Civ. P. 26(b)(3)(A); *Sandra T.E.*, 600 F.3d at 618. However, if the documents are otherwise discoverable under Rule 26(b)(1) and the party shows that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," the court may order disclosure. *Id.* But the mental impressions, conclusions, opinions, or

---

[5]    In her reply brief, Babych very briefly suggests that "there is a possibility that the crime-fraud exception" applies here to place the communications on April 20 outside of the attorney-client privilege. (Pl.'s Reply at 3.) Babych's assertion is deficient for two reasons. First, she raised it for the first time in her reply brief, and the argument is therefore waived. *See U.S. v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009.) Even if the argument had been properly raised, Babych has not made a sufficient *prima facie* showing that the exception might apply here. *See U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007). To overcome the privilege protecting the communications, Babych must give some factual basis that they were made "in furtherance of" a crime or fraud. *Id.* The only basis Babych provides is the allegation raised in her amended complaint that "Defendants engaged in Medicaid fraud . . . ." (Pl.'s Reply at 3.) Even if these allegations are proven, Babych does not explain how the April 20 communications might have been "in furtherance of" any Medicaid fraud. *In camera* review of the documents created at the April 20 meeting does not reveal any basis for the crime/fraud exception.

legal theories of an attorney about the litigation are to be protected. Fed. R. Civ. P. 26(b)(3)(B).

In this case, defendants have asserted work-product protection for the notes of Mr. Rusie, the draft statement Mr. Rusie created that Ms. Bruhn refused to sign, and the revised statement she did sign. After reviewing these documents *in camera*, the court concludes they are entitled to protection as work-product, in addition to the attorney-client privilege which protects the communications reflected in them. The notes by Mr. Rusie and the statement he prepared reflect his memorialization of the statements gathered from the interview with Ms. Bruhn, and were prepared for the purposes of the litigation already pending at the time of the meeting. Such notes and memoranda of witnesses' oral statements are entitled to work-product protection. *Upjohn*, 449 U.S. at 400-01. "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . . ." *Id.* at 399.

Babych implies she needs the statement to determine if there are "inconsistencies" between what Ms. Bruhn told Mr. Rusie and what she testified to in her deposition. However, courts have been "extremely reluctant" to allow discovery of attorney work product simply for impeachment purposes. *Sandra T.E.*, 600 F.3d at 622. Babych also argues a "fundamental unfairness" in not having access to the statement that defendants might use for impeachment purposes. However, as defendants point out, if they sought to introduce the statement for that purpose, the protection would be waived and Babych would be entitled to see it at that time.

The documents prepared at the April 20 meeting are protected work product, and defendants are not required to produce them.

5.      Sanctions

Defendants contend that Babych and her counsel should be ordered to pay the fees defendants incurred in defending the present motion, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). That rule requires a movant whose discovery motion is denied to pay the opposing party its reasonable expenses and fees incurred in opposing the motion.  However, the rule also provides that the court must not order payment if the motion was "substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Although Babych's position was not compelling enough to override the attorney-client privilege or work-product protection, the motion was not unreasonable or baseless, especially in light of the dispute about the choice of law. Because defendants' privilege log was sparse, Babych was unable to determine the factual substance of the April 20 meeting and documents and to what claims they might apply.  Only *in camera* review of the documents allowed the court to assess the privilege.  Babych will not be sanctioned for seeking a determination of whether there was a basis for defendants' claims of attorney-client privilege and work-product protection.  Defendants' request for an award of their fees in opposing the motion is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Third Party Deposition Witness Gina Bruhn to Answer Questions [64] is denied.

**IT IS SO ORDERED.**

_____
Geraldine Soat Brown
United States Magistrate Judge

December 15, 2010

13