**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FRAN A. BABYCH,** | ) | |
| **for herself** | ) | |
| **and on behalf of similarly situated others,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 09 C 8000** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **PSYCHIATRIC SOLUTIONS, INC.,** | ) | |
| **BHC MANAGEMENT SERVICES OF** | ) | |
| **STREAMWOOD, LLC, BHC STREAMWOOD** | ) | |
| **HOSPITAL, INC., CINDY MEYER, and** | ) | |
| **DONNA STONE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Fran Babych filed suit against her former employers alleging violations of the
Fair Labor Standards Act ("FLSA"), Family Medical Leave Act, Age Discrimination in
Employment Act, Illinois Minimum Wage Law, Illinois Human Rights Act, Illinois
Whistleblower Act, and common law claims for retaliatory discharge. Before the court are
Babych's motions requesting (1) approval of a judicially supervised notice of an FLSA
collective action under 29 U.S.C. § 216(b), and (2) leave to amend her complaint to add
Christine Puncochar as a named plaintiff. For the reasons stated below, Babych's motion for
approval of judicially supervised notice [#56] will be granted and her motion to amend the
complaint [#103] will be granted.

## BACKGROUND

BHC Streamwood Hospital, Inc., which does business as Streamwood Behavioral Health Center ("Streamwood"), provides inpatient hospital treatment for children and adolescents with acute psychiatric problems. (Pl.'s Ex. 9, Babych Decl. ¶ 1.) It is located on a campus in Streamwood, Illinois that includes other inpatient treatment facilities affiliated with Psychiatric Solutions, Inc. ("PSI"). (*Id.*) Babych, a registered nurse, worked at the Streamwood campus from October 1999 to May 22, 2008. (*Id.*)

Defendant PSI owns 95 inpatient behavioral healthcare facilities throughout the United States, Puerto Rico, and the U.S. Virgin Islands. (Pl.'s Ex. 2; Defs.' Ex. 1, Schwieger Decl. ¶ 5.) It acquired Streamwood in July 2005. (Babych Decl. ¶ 2.) On November 15, 2010, PSI was acquired by Universal Health Services, Inc. As of that date, it has functioned as a non-operating holding company without employees. (Schwieger Decl. ¶ 3.) PSI's primary assets are the stock or equity interests of its subsidiaries. (*Id.*) PSI owns Streamwood, one of its hospital subsidiaries, through the intermediate subsidiary BHC Holdings, Inc. (*Id.* ¶¶ 6, 23.) PSI does not control the management or operations of its hospital subsidiaries. (*Id.* ¶¶ 8–20.)

Babych worked as a Utilization Review Case Manager ("UR Case Manager") at Streamwood from March 2008 to May 2008. (Babych Decl. ¶¶ 2–4.) As UR Case Manager, Babych collected information from in-patient charts, medical records, and treaters and input the data into written requests for a patient's continued stay at Streamwood. (*Id.* ¶ 10.) She sent these requests to state, federal, and private insurance payers to obtain authorization for additional paid days of care for Streamwood's patients. (*Id.*)

Babych attests that she routinely worked more than 40 hours per week while she was a UR Case Manager and that she regularly observed other UR Case Managers working in excess of 40 hours per week. (*Id.* ¶ 7.) Babych and the other UR Case Managers were classified as salaried employees exempt from overtime under the FLSA. (*Id.* ¶ 6.)

Babych attests that her job duties did not require the exercise of independent judgment with respect to matters of significance and that she was not involved in managing Streamwood's business operations. She relied on manuals and guidelines to perform her duties, which primarily consisted of inputting data into forms. (*Id.* ¶¶ 9, 11, 14.) For many continued stay requests, Babych used a web-based format that was provided by HealthSystems of Illinois. (*Id.* ¶ 12.) Her work was supervised by a UR Director named Donna Stone, and she had no control over which cases she worked on. (*Id.* ¶¶ 9, 10.) Babych did not supervise any employees and did not have the discretion to hire or fire employees or interview job applicants. (*Id.* ¶¶ 15, 19.) Babych attests that she did not deliver or administer services directly to patients and did not provide clinical care, make decisions concerning patient care, or make final determinations about whether or not a patient was certified for additional days in the facility. (*Id.* ¶¶ 17–18.)

On May 21, 2008, Babych called Streamwood's external ethics hotline to report that she had been told to doctor her requests for stay in order to prolong inpatient treatment at Streamwood. (Amend. Compl. ¶¶ 22–30; Babych Decl. ¶ 3.) She was fired the next day. (Babych Decl. ¶ 3.)

# ANALYSIS

## I.    Motion for Judicially Supervised Notice Under 29 U.S.C. § 216(b)

Babych moves to conditionally certify an FLSA collective action on behalf of the following group:

> All current and former employees of Psychiatric Solutions, Inc. during the statutory period who were Utilization Review Case Managers, Utilization Review Case Specialists, or who held a similarly titled position and job duties, who worked at least one hour of overtime, and who were not paid overtime compensation because Psychiatric Solutions, Inc. misclassified the employees as exempt.

Pl.'s Mot. for Cert. at 2. She proposes to send notice by first class mail and by posting notice in all of PSI's work locations throughout the United States, Puerto Rico and the U.S. Virgin Islands. *Id.*

### A.    Legal Standard for Conditional Certification

The FLSA expressly provides that an employee may bring a collective action on "behalf of himself . . . and other employees similarly situated" to recover unpaid overtime compensation. 29 U.S.C. § 216(b). A prospective member of the collective action may "opt-in" by filing a written consent form in the court where the action is brought; a person who does not opt-in is not part of the FLSA collective action and is not bound by the court's decision. *Gambo* v. *Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

District courts use the conditional certification process to determine whether potential members of an FLSA collective action should be given the opportunity to participate in the collective action. *Ervin* v. *OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Although a plaintiff in an FLSA collective action is not required to seek leave of the court prior to issuing notice of the lawsuit to prospective members, *Heitmann* v. *City of Chicago*, No. 04 C 3304, 2004

WL 1718420, at *2 (N.D. Ill. July 30, 2004), courts in this district have regularly exercised discretionary authority over the notice process. *Gambo*, 2005 WL 3542485, at *3. The Seventh Circuit has determined that a district court may not prohibit a plaintiff from sending notice altogether. *Woods* v. *New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Beyond that limitation, the Court of Appeals has not provided guidance on how a district court should exercise its discretion in the notice process under 29 U.S.C. § 216(b). *AON Corp. Wage & Hour Emp't Practices Litig.*, No. 08 C 5802, 2010 WL 1433314, at *4 (N.D. Ill. Apr. 8, 2010).

A number of courts have used a two-step method to determine whether a plaintiff is "similarly situated." *See, e.g.*, *Gambo*, 2005 WL 3542485, at *3; *Persin* v. *CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005); 7B Charles A. Wright et al., *Federal Practice and Procedure* § 1807 & n.48. At the first step, "[a] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores* v. *Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citing *Taillon* v. *Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003)) (internal quotation marks omitted). "Once such a 'modest factual showing' has been made, a court may, in its discretion, order that notice be provided to putative collective action plaintiffs. The second step consists of the court determining whether the class should be restricted based on the 'similarly situated' requirement after discovery is complete." *Id.* (citing *Belbis* v. *Cnty. of Cook*, No. 01 C 6119, 2002 WL 31600048, at *4 (N.D. Ill. Nov. 18, 2002)) (internal quotation marks omitted).

**B.     Whether the First or Second Step of the Conditional Certification Analysis Applies**

PSI argues that the court should apply the more stringent second step of the conditional certification analysis because substantial discovery took place before Babych filed her motion for conditional certification.  Some courts have applied either the more stringent second step analysis or an "intermediate" standard if the parties have already engaged in discovery on the issue of class certification.  *See, e.g.*, *Bunyan* v. *Spectrum Brands, Inc.*, No. 07-CV-0089, 2008 WL 2959932, at *4 (S.D. Ill. Jul. 31, 2008) (applying intermediate standard where substantial discovery had taken place as to the issue of certification); *Villanueva-Bazaldua* v. *TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D. Del. 2007) (applying intermediate standard where parties had engaged in discovery); *Pfohl* v. *Farmers Ins. Grp.*, No. CV03-3080, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004) (applying stringent standard where the parties did not dispute that they had undertaken discovery as to certification issues); *Belbis*, 2002 WL 31600048, at *5 (applying stringent standard where discovery was closed).

The circumstances of this case do not warrant the application of either an intermediate standard (whatever that may be) or the more stringent standard.  The parties' agreed scheduling order contemplates that additional discovery will occur after collective action certification.  It provides, in relevant part:

> If this matter remains a single-plaintiff case, the parties shall have until March 31, 2010, to amend pleadings, join other parties, or file motions;
>
> If this matter remains a single-plaintiff case, non-expert discovery shall be concluded by August 31, 2010;
>
> If this matter remains a single-plaintiff case, trial expert disclosures shall be exchanged by September 15, 2010, and expert discovery shall be concluded by October 15, 2010;

Depositions of all non-expert witnesses shall be concluded by November 15, 2010.[1]

Any motions shall be filed before December 16, 2010.

Dkt. #24. Courts have declined to skip the first step of the conditional certification inquiry where the parties' agreed schedule indicates that there will be two stages of discovery. *See AON Corp.*, 2010 WL 1433314, at *8 (citing *Gieske* v. *First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1167 (D. Kan. 2006)). To be sure, this scheduling order is not a model of clarity, particularly when compared with bifurcated discovery schedules in other cases. *See AON Corp.*, Case No. 08 C 5802, Joint Initial Status Rep't, Dkt. #12. Nevertheless, the use of the phrase "[i]f this matter remains a single plaintiff case" can only be understood to mean that the discovery cut-off dates do not apply if a collective action is certified. Therefore the court is reluctant to apply the more stringent standard to Babych's motion.

In addition, unless the court is able to assess the individual claims of the employees who choose to opt-in to this FLSA collective action, it cannot make a final determination of whether the class members are "similarly situated." The inquiry at the conditional certification stage is necessarily limited by the lack of detailed information about the other opt-in plaintiffs, and application of the stringent standard might prevent some plaintiffs from pursuing their claims. *See Russell* v. *Ill. Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 823 (N.D. Ill. 2010) (noting that because of the modest amounts likely involved, "many of the plaintiffs would be unable to afford the costs of pursuing their claims individually"); 7B *Federal Practice and Procedure* § 1807

---

[1] The cut-off date for non-expert discovery and depositions was subsequently extended to December 14, 2010. *See* Dkt. # 82.

(noting that the inquiry into conditional certification is "necessarily somewhat limited" because the members of the collective action are largely unknown). Thus, the "second-step determination is best made in light of who is actually in the case." *Molina* v. *First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). PSI, on the other hand, will not be unduly prejudiced because it may file a motion to de-certify the class once notice has been issued and the record is complete. *Betancourt* v. *Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *4 (N.D. Ill. Apr. 21, 2011) ("The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification." (citation omitted)). At that time, the court will engage in a comprehensive analysis of the claims asserted by the opt-in plaintiffs. For all of these reasons, the court will apply the more lenient first step of the conditional certification analysis. *See Molina*, 566 F. Supp. 2d at 786 (applying the first step analysis where some but not all discovery had taken place).

### C.    Conditional Certification

At the first step of the conditional certification analysis, courts have interpreted the "similarly situated" requirement leniently. *See Jones* v. *Furniture Bargains, LLC*, No. 09 C 1070, 2009 WL 3260004, at *2 (N.D. Ill. Oct. 9, 2009) (citing *Mielke* v. *Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)). The plaintiff's "modest factual showing," however, cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents. *Molina*, 566 F. Supp. 2d at 786. Factors that may be considered in determining whether

plaintiffs are similarly situated include (1) similarities and differences in the employment and other factual settings of the plaintiffs, including whether they worked in different locations and were under different supervisors, (2) the extent to which the plaintiffs will rely on common evidence, (3) whether the same defenses are available with respect to all of the plaintiffs, and (4) fairness and procedural considerations. *Id.* at 787.

Babych asserts that she and other UR Case Managers were improperly classified as exempt from overtime because the administrative exemption does not apply to their duties. *See* 29 C.F.R. § 541.200.[2] An employee qualifies for the administrative exemption if she is paid on a specified salary basis and her "primary duty" (1) "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (2) "includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200 (a)(2)–(3). Work that is "directly related to the management or general business operations" assists with the "running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a). It includes work in functional areas such as work in functional areas such as tax, accounting, procurement, advertising, marketing, safety and health, human resources, public relations, and legal and regulatory compliance. *Id.* § 541.201(b). An employee exercises independent judgment when she "compar[es] and . . . evaluat[es] . . . possible courses of conduct[] and act[s] or mak[es] a decision after the various possibilities have been considered." *Id.* § 541.202(a). An employee

---

[2] Babych also argues that the "learned profession" exemption does not apply. PSI concedes this issue by failing to address the learned profession exemption in its opposition brief.

who performs specialized work "along standardized lines involving well-established techniques and procedures" that are described in manuals or other sources generally does not qualify for the administrative exemption. *Id.* § 541.203(g).

Babych attests that the UR Case Managers at Streamwood prepared requests for continued stays by referring to manuals, guidelines, and templates. She compiled and input data from other sources but did not make an independent determination of the correct length of a patient's stay. Babych further attests that they did not exercise independent judgment and that their supervisor, Donna Stone, told them how to write continued stay review requests. According to Babych, the UR Case Managers' primary duties were to compile information from patient charts and input the information into a stay review request form. They did not supervise other employees and did not have authority to make management decisions. Taking the foregoing into account, Babych has made a threshold showing that she and the other UR Case Managers at Streamwood did not qualify for the administrative exemption under the FLSA.[3]

Based on Babych's limited submission, however, the court will not authorize notice to UR Case Managers or similarly-titled employees at other facilities owned by PSI. Babych worked at Streamwood and her declaration does not contain any information regarding the practices at other facilities.[4] The only information that Babych has submitted that relates to utilization review positions at other facilities consists of copies of job postings from PSI's website. (*See* Pl.'s Exs. 17, 28–30 (online job postings for UR Specialist, UR Case Manager, and

---

[3] With her reply brief, Babych submitted a declaration from Christine Puncochar, another former UR Case Manager at Streamwood. Puncochar's description of her duties as a UR Case Manager are consistent with Babych's declaration. Because the declaration was submitted only with Babych's reply brief the court has not considered it in ruling on Babych's motion for conditional certification.

[4] Puncochar's declaration is also limited to Streamwood.

UR Director positions at facilities in Florida, California, South Carolina, and Nevada).) The postings do not demonstrate that employees with similar job titles worked more than 40 hours per week at other facilities or were classified as exempt under the FLSA. Nor has Babych cited testimony of PSI's or Streamwood's managers or directors that would indicate that every PSI facility had a common policy of misclassification. PSI's Director of Human Resources, Lisbeth Gehrke, testified that she was a "resource" for management at other facilities and that she provided training on topics ranging from "benefits administration to employee relations training." (Pl.'s Ex. 11 at 8–9, 13.) Although these statements support Babych's contention that PSI could be considered her "employer," as that term is broadly defined under the FLSA, *see infra* at 13–17, they cannot reasonably be interpreted as evidence that all PSI-owned facilities misclassified UR Case Managers or similar employees as FLSA-exempt. Because Babych has not made a "modest factual showing" that she is similarly situated to employees who worked at other facilities, the court will only authorize notice to employees at Streamwood. *See Collazo* v. *Forefront Educ., Inc.*, No. 08-cv-5987, 2010 WL 335327, at *2 (N.D. Ill. Jan. 28, 2010) (declining to certify class that included employees at defendant's Florida offices based only on copies of web pages that provided job descriptions of similar positions); *Molina*, 566 F. Supp. 2d at 789 (notice limited to Chicago territory where named plaintiffs had only worked in that territory).

PSI argues that the court should deny Babych's motion for conditional certification because administrative misclassification lawsuits are generally inappropriate for collective determination. This argument is not persuasive. Where a plaintiff has made a threshold showing that she is similarly situated, "the argument that a defendant is protected by the administrative

exemption [is] more properly decided as part of the second stage analysis in a section 216(b) conditional class certification case upon a more developed factual record." *Betancourt*, 2011 WL 1548964, at *7 (collecting cases). Indeed, it is the employer's burden to establish that an employee falls within one of the FLSA's exemptions. *Roe-Midgett* v. *CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008). Based on the record before the court, it does not appear that the job duties of UR Case Managers, UR Specialists, or similar positions would vary so greatly that determination of the class members' status under the FLSA would have to be done on an individual basis. The cases cited by PSI are distinguishable on these grounds. *See Aguiree* v. *SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *14 (S.D. Tex. Mar. 12, 2007) (work of development coach managers differed from person to person and varied over time depending on how they were supervised); *Harris* v. *Fee Transp. Servs., Inc.*, No. Civ.A.3:05CV0077-P, 2006 WL 1994586, at *3–5 (N.D. Tex. May 15, 2006) (named plaintiffs represented at least three different positions and only commonality appeared to be that they were employed by the same defendants); *Reich* v. *Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013–14 (N.D. Ind. 2005) (determination of whether employees were misclassified under the "loader exemption" would require court to determine portion of time each spent on specific tasks); *Pfohl*, 2004 WL 554834, at *10 (declining to certify collective action consisting of hundreds of independent contractor adjusters); *Clausman* v. *Nortel Networks, Inc.*, No. IP-02-0400-C-M/S, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003) (whether employees can be classified as an "outside salesman" would require individualized determination); *Mike* v. *Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220–21 (D. Conn. 2003) (plaintiff admitted that he did both administrative and

non-administrative tasks, therefore determination would require analysis of portion of time spent on specific tasks).

PSI also argues that the court should not conditionally certify Babych's collective action because she has not demonstrated that other UR Case Managers desire to opt in to the case. Such a rule has not been adopted in this circuit. A number of courts have held that requiring plaintiffs to come forward with evidence that there are other employees who desire to opt-in is in conflict with the "Supreme Court's position that the Act should be liberally 'applied to the furthest reaches consistent with congressional direction.'" *See, e.g.*, *Reab* v. *Elect. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (quoting *Alamo Found.* v. *Sec'y of Labor*, 471 U.S. 290, 296, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)). The requirement is also impractical because "it would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Heckler* v. *DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). For reasons of practicality and because the FLSA is "remedial and humanitarian in purpose," *see Tenn. Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944), this court will not apply a rule that would require a plaintiff to come forward with evidence that there are other employees who desire to opt-in.

### D. Whether PSI Was Babych's or the Putative Class Members' Employer

Finally, PSI argues that the court should deny Babych's motion for conditional certification because it is not Babych's employer or the employer of any putative class members. The FLSA defines the term "employer" to include "any person acting directly or indirectly in the

interest of an employer in relationship to an employee." 29 U.S.C. § 203(d). An "employee" is

defined as "any individual employed by an employer." *Id.* § 203(e)(1). Courts have recognized

that these terms are defined broadly in order to accomplish the remedial purposes of the FLSA.

*See, e.g.*, *Sec'y of Labor, U.S. Dep't of Labor* v. *Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987)

(collecting cases). Rather than relying on common law concepts to determine whether an

employer-employee relationship exists, courts examine the "economic reality" of the working

relationship. *Vanskike* v. *Peters*, 974 F.2d 806, 808 (7th Cir. 1992); *Lauritzen*, 835 F.2d at 1534.

This requires examination of all the circumstances of the work activity, *Lauritzen*, 835 F.2d at

1534 (citing *Rutherford Food Corp.* v. *McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 1476, 91 L.

Ed. 1772 (1947)), keeping in mind that "employees are those who as a matter of economic

reality are dependent upon the business to which they render service." *Id.* (quoting *Mednick* v.

*Albert Enters., Inc.*, 508 F.2d 297, 299 (5th Cir. 1975)). Factors to consider include "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." *Vanskike*, 974 F.2d at 808 (quoting *Bonnette*

v. *Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).[5]

---

[5] PSI argues that the court should apply the "integrated enterprise" test to determine whether PSI and Streamwood can be considered a single employer under the FLSA, citing *Rogers* v. *Sugar Tree Prods., Inc.*, 7 F.3d 577, 582 (7th Cir. 1993). This test for employer liability arose in the context of federal anti-discrimination laws that require a covered employer to have a minimum number of employees. *See Papa* v. *Katy Indus., Inc.*, 166 F.3d 937, 939 (1999). The court is aware of no case in this circuit that applies the test in analyzing whether an entity is an employer under the FLSA, and indeed the FLSA has its own standard for "enterprise" coverage. *See* 29 U.S.C. § 203(r). The cases PSI cites are not binding and are not on point. *See In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 327–28 (W.D. Pa. 2010) (examining personal jurisdiction); *Maddock* v. *KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1242 (C.D. Cal. 2007) (determining whether defendant was an employer under the California Labor Code; *EEOC* v. *Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 571–72 (6th Cir. 1984) (Title VII claims). Moreover, the four-factor *Rogers* test was abrogated by *Papa*. Courts

14

Separate entities that share common control over an individual worker may be deemed "joint employers" under the FLSA. 29 C.F.R. § 791.2(a). Courts use the same "economic reality" test to determine whether more than one employer may be held liable under the FLSA, *Reyes* v. *Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406–08 (7th Cir. 2007), although the key factors may differ and the determination will depend on the specific facts of the case. *See Moldenhauer* v. *Tazewell-Pekin Consol. Comm. Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

Babych has submitted evidence that PSI owned Streamwood as of July 2005 and was involved in decisions regarding employee compensation and benefits. (*See* Babych Decl. ¶ 2.) Streamwood's Director of Human Resources, Carolyn Paganoni, testified that PSI could be used as a "resource" for local human resources directors to assist in determining whether employees should be classified as exempt or nonexempt under the FLSA. (Pl.'s Ex. 10, Paganoni Dep. at 13–14.) PSI's Director of Human Resources, Lisbeth Gehrke, similarly testified that she is a resource for HR directors and that PSI provides training regarding benefits administration and employee relations. (Gehrke Dep. at 8–9, 11–13.) Cynthia Meyer, the Chief Executive Officer of Streamwood and Streamwood Consolidated, testified that her employer was PSI.[6] (Pl.'s Ex.

---

now consider whether it would be appropriate to pierce the corporate veil, whether the entities undertook express actions to avoid corporate liability, or the whether the putative defendant directed the discriminatory act, practice, or policy. *See Papa*, 166 F.3d at 940–42. These narrow grounds for allowing parent company liability appear to be inconsistent with the broad definition of "employer" under the FLSA.

[6] Streamwood Consolidated includes Streamwood Hospital, the Northwest Academies, and the John Costigan Center. (Pl.'s Ex. 6, Meyer Dep. at 8.) PSI argues that Meyer's testimony was incorrect and that she was actually employed by Psychiatric Solutions Hospitals, LLC. The portion of the Schwieger Declaration that PSI cites in support, however, appears to discuss PSI's corporate structure after November 15, 2010. (Schwieger Decl. ¶¶ 2, 9.) Meyer was deposed on April 16, 2010. The Schwieger Declaration does not call the accuracy of her testimony into question.

6, Meyer Dep. at 8.) Meyer approved Babych's transfer to the Streamwood Utilization Review Department in March 2008. (Babych Decl. ¶ 3.)

Babych has submitted several documents that suggest that PSI was, at the least, a joint employer with Streamwood. When Babych was transferred to the Utilization Review Department in 2008, the transfer was memorialized on a form titled "Psychiatric Solutions, Inc. UltiPro Company Transfer Request." (Babych Decl. Ex. E.) The transfer form states: "In order to facilitate the transfer of employees from one PSI facility to another, all transfers will be completed by the corporate office . . . . This corporate transfer will maintain all accrual balances, benefits, contacts, demographics, etc. . . . without having to re-enter all of this information. It will also maintain the original hire date in the employee record." (*Id.*) The most logical reading of this form is that PSI, referred to as "corporate," maintains the employee's records and gives the final approval for the transfer. In addition, Babych's 2007/2008 Benefits Confirmation Statement, Flexible Spending Account Enrollment Form for 2006 and 2007, and 2007 Benefit Open Enrollment Form, state that PSI was her employer. (*Id.* Exs. A–D.) Pursuant to its internal Corporate Compliance Program, PSI also operated the ValuesLine hotline that Babych called in 2008. (*See id.* ¶ 3; Pl.'s Exs. 13, 14.) Babych received an exit interview form from PSI when she was terminated, and PSI also directed the investigation of her ethical complaint. (Babych Decl. ¶ 3.)

Finally, in 2009 PSI entered into a Management Services Agreement with hundreds of subsidiaries, including BHC Streamwood Hospital, Inc., whereby PSI agreed to provide numerous operational services including consultation and organization on resources, legal advice and counsel, payroll, recruiting, and consultation on policies and procedures related to the

operation of facilities.  (Pl.'s Ex. 15, Management Servs. Agmt. at PSI_21.)  Taking all of this evidence into account, Babych has made a threshold showing that PSI is the putative class members' employer.[7]

PSI asserts that it is not a covered employer because it currently functions as a non-operating holding company without any employees.[8]  (*See* Defs.' Ex. 1, Schwieger Decl. ¶¶ 2–3.)  For the purpose of evaluating Babych's FLSA claim, however, the relevant time-period is the three years prior to the filing of her complaint.  *See* 29 U.S.C. § 255(a) (three year statute of limitations for willful violations of FLSA); *Kennedy* v. *Commonwealth Edison Co.*, 410 F.3d 365, 367 (7th Cir. 2005) (where plaintiffs' employer changed from ComEd to Exelon Generation due to corporate merger and restructuring, ComEd conceded that the case against it was "alive" because it was the plaintiffs' employer when the case began).  Babych will be permitted to proceed against PSI as the putative class members' employer.

For the foregoing reasons, the court will authorize notice to UR Case Managers, UR Case Specialists, and others who held similarly titled positions and job duties and who were employed at Streamwood during the statutory time period.

---

[7] PSI has submitted affidavits from three Utilization Review Coordinators who worked at Streamwood and who attest that, to the best of their knowledge, Streamwood was their employer.  Defs.' Exs. 2–4.  At the conditional certification stage, however, the court need not determine contested issues of fact.  *See Betancourt*, 2011 WL 1548964, at *7 (collecting cases).

[8] As of November 15, 2010, each of PSI's hospital subsidiaries, including Streamwood, has functioned as an independent legal entity with its own executive officers, human resources department, and employees.  (Schwieger Decl. ¶¶ 8–9, 12–20.)

## II.     Motion to Amend Complaint

In November 2010, Babych learned that Puncochar had worked as a UR Case Manager at Streamwood from September 2007 through February 2008. Babych did not previously know Puncochar because Puncochar had already left Streamwood when Babych started work as a UR Case Manager. In January 2011, Babych contacted Puncochar, who filed a notice of consent to become a party plaintiff on January 17, 2011. *See* Dkt. #99. On January 19, 2011, Babych filed a motion for leave to file a second amended complaint that would add Puncochar as an individual plaintiff to Count IX for violations of the FLSA. *See* Dkt. #103. PSI opposes the motion on the grounds that joining Puncochar is unnecessary and would allow Babych to make an end-run around the FLSA's statute of limitations.

Babych filed her motion to amend the complaint after the pretrial scheduling order deadline for filing amended pleadings had passed.[9] Under Rule 16(b), "[a] [pretrial] schedule may be modified only for good cause and with the judge's consent." In determining whether the moving party has shown "good cause," the court "primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co.* v. *Gen. Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted). If the moving party establishes good cause, then the court applies Rule 15(a) to determine whether amendment is proper. *See, e.g.*, *Triteq Lock & Sec. LLC* v. *Innovative Secured Solutions, LLC*, No. 10 C 1304, 2011 WL 3203303, at *2 (N.D. Ill. Jul. 21, 2011). Rule 15(a) provides that a court should "freely" grant a motion to amend the complaint

---

[9] The order provides: "If this matter remains a single-plaintiff case, the parties shall have until March 31, 2010, to amend pleadings, join other parties, or file motions." *See* Dkt. #24. Although this sentence does not make clear whether Babych could file a motion to amend her complaint while her motion for conditional certification was pending, the order also states that "[a]ny motions shall be filed before December 16, 2010." *Id.* Therefore, regardless of whether this case remained a single-plaintiff case, Babych was required to file her motion to amend by December 16, 2010.

"when justice so requires."  The court "need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile."  *Bethany Pharmacal Co., Inc.* v. *QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (citing *Foman* v. *Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

 Babych has demonstrated good cause for failing to meet the deadline set forth in the parties' scheduling order.  She represents that she did not learn of Puncochar until November 2010 and was not able to contact her until January 2011.  Not long thereafter, Babych filed her motion for leave to add Puncochar as a plaintiff.  PSI does not contest these representations.  Therefore Babych has satisfied the requirements of Rule 16(b).

Turning to the Rule 15(a) analysis, there is no evidence that Babych engaged in undue delay in filing her motion, that she filed the amendment in bad faith, or that she filed with a dilatory motive.  The allegations in Babych's complaint do not change materially as a result of adding Puncochar as a party because both women assert substantially the same claim: that they were misclassified as exempt employees while they were employed as UR Case Managers at Streamwood.  (*See generally* Pl.'s Proposed Second Amend. Compl.)  Moreover, Puncochar is already a party to the collective action by virtue of having filed her written notice of consent.  *See* 29 U.S.C. § 256(b).  While Puncochar does not need to be added as a named plaintiff in order to preserve her rights under the FLSA, no harm will result to PSI from allowing her to do so.  The court has only just granted conditional certification of Babych's FLSA collective action and, as a result, additional discovery is warranted under the scheduling order.  For these reasons, the court will grant Babych's motion to amend her complaint to add Puncochar a named plaintiff to Count IX.

Babych also argues that if her complaint is amended to add Puncochar a named plaintiff then Puncochar's claim will "relate back" to the date of the original complaint for the purpose of tolling the FLSA's statute of limitations. This argument is without merit. Under Rule 15(c), an amended pleading "relates back" to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back" or the amendment asserts a claim or defense that "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(A). Count IX alleges class claims under the FLSA, which provides that "an action is commenced . . . in the case of any individual claimant . . . on the [] date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). The section of the FLSA relating to collective actions reiterates that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* § 216(b). Thus, the statute is clear that a suit is not "'commenced' for statute of limitations purposes until . . . consent is filed." *Harkins* v. *Riverboat Servs., Inc.*, No. 99 C 123, 2002 WL 32406581, at *2 (N.D. Ill. May 17, 2002) (quoting *Salazar* v. *Brown*, No. G87-961, 1996 WL 302673, at *10 (W.D. Mich. Apr. 9, 1996)), *aff'd* 385 F.3d 1099 (2004). "[W]ritten consents . . . do not relate back" to the filing of the original complaint. *Id.* Puncochar's action was commenced on the date she filed her notice of consent.


**CONCLUSION**

For the foregoing reasons, Babych's motion for conditional certification [#56] is granted and her motion to amend the complaint [#103] is granted. Babych will be permitted to file her

Second Amended Complaint but Puncochar's individual FLSA claims will not "relate back" to the date when Babych's original complaint was filed. Babych's proposed notice will need to be modified reflect the limitation to the Streamwood facility. The parties should submit an agreed modified scheduling order by November 23, 2011. This case is set for a status hearing on December 1, 2011.

Dated: Nov. 9, 2011                    Enter: _____

                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge